UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                      Case No. 07-CR-243

VICTOR GONZALEZ and
HILDA ALAYETO,

    Defendants.

DECISION AND ORDER
ADOPTING THE DECEMBER 4, 2007, RECOMMENDATION OF
MAGISTRATE JUDGE WILLIAM E. CALLAHAN, JR., AND
DENYING DEFENDANTS' MOTION TO SUPPRESS

On November 9, 2007, Magistrate Judge William E. Callahan, Jr., conducted an evidentiary hearing on the defendants' motions to suppress during which three Milwaukee Police Officers testified. Thereafter, Judge Callahan issued a recommendation that the court deny defendants' motion to suppress and deny defendant Hilda Alayeto's motion to dismiss the indictment claiming outrageous police conduct. In consideration of the defendants' objections to the recommendation, the court reviewed this matter de novo, 28 U.S.C. §§ 636(b)(1)(B) & (C), and conducted a conference on January 31, 2008. At that time, the court denied defendant Alayeto's motion to dismiss and scheduled a supplemental evidentiary hearing. As a consequence, the government agreed to investigate whether there is documentary evidence corroborating testimony that they conducted record checks and spoke with other officers regarding the defendants prior to

arresting them on July 4, 2007. For the reasons set forth below, the court will overrule defendants' objections and adopt the recommendation.

With respect to the motion to suppress, the defendants argued that the officers did not have probable cause to stop the vehicle driven by defendant Victor Gonzalez on July 4, 2007. Defendant Alayeto argued that her post detention statement was tainted by an unlawful arrest. However, based on the testimony of Milwaukee Police Officers Kurt Lacina and Jason Rodriguez, Judge Callahan found that "within the week or so prior to stopping Gonzalez they had run a status check on him which revealed that his driver's license had been revoked, and further that the officers stopped the Lincoln based on that information." (Recommendation, p. 7) The anti-gang unit had targeted Alayeto and Gonzalez as associates of the East Side Mafiosos, and that as officers in that unit they "were undoubtably continuously seeking out reasons to stop know associates like Alayeto and Gonzalez." (*Id.*) Judge Callahan observed that it was uncontested that Gonzalez's drivers license was revoked when he was stopped on July 4, 2007. (*Id.*)

That being said, Judge Callahan wrote:

> Having made such a determination, however, the court nevertheless feels compelled to note that the defendants' concern about the veracity of both Officers Lacina and Rodriguez does not fall upon deaf ears. While on the stand, both Officers Lacina and Rodriguez appeared unusually nervous and were easily confused by counsels' even straightforward questions. The officers seemed to try to embellish the reasons for the traffic stop, each hastening to add that the Lincoln's front license plat was missing and that a city arrest warrant had been issued for Alayeto.

(Recommendation, p. 8) Notwithstanding these concerns, Judge Callahan was certain that Alayeto and Gonzales were known as associates of the East Side Mafiosos and that

2

the officers as members of the anti-gang unit, ran status checks on these individuals on at least a weekly basis.

Upon a close examination of the record, it is clear that police officer Lacina testified that he had been investigating the East Side Mafiosos for approximately six to seven months, and that members of the anti-gang unit discussed their targets almost everyday and had meetings once a week. (Tr. pp. 10-11) He further testified that officers discussed the status of the individuals allegedly involved, such as what they have been cited or arrested for — anything from traffic violations to municipal violations and state arrests. (Tr. p. 12)

Lacina testified that at the time of the traffic stop on July 4, 2007, he saw Victor Gonzalez operating the vehicle and knew that Gonzalez had a revoked driver's license. (Tr. pp. 14-16) He added that he had known for six months that Gonzalez had a revoked license, and had run a check within the week. (Tr. pp. 16-17) Lacina also knew at the time of the stop that Alayeto had one cash bail warrant with the City of Milwaukee, one municipal warrant with the City of Milwaukee and no front license plate on the car he was operating. (Tr. pp. 19, 66)

Similarly, Rodriguez testified that he had been working in the anti-gang unit for approximately three years and that he had never known Gonzalez to have a valid driver's license. (Tr. p. 87) He further testified that his partner relayed to him that Gonzalez's driver's license was revoked within the week. (Tr. p. 89) When asked about the reasons for the July 4 stop, Rodriguez responded that he had known Gonzalez for seven years, had never known Gonzalez to have a valid license, knew that Gonzalez did

3

not have a valid license, knew that Alayeto had two outstanding warrants, and realized that the front license plate was missing from his car. (Tr. pp. 87-88,110, )

In view of this information, Lacina and Rodriguez had a valid basis for their July 4, 2007, stop. While the court appreciates the concerns expressed by the defendants regarding the credibility of the officers and the admissibility of the exhibits introduced during the supplemental hearing, the officers' testimony was remarkably consistent regarding the last status check run on Gonzalez's license.

That testimony is bolstered, albeit indirectly, by the testimony of Captain Darryl Winston at the supplemental hearing. As the Commander of the Data Services Division of the City of Milwaukee Police Department (MPD), he testified that the National Crime Information Center (NCIC) provides information to law enforcement concerning a subject's wanted or driving status. Every secure terminal and mobile data computer is assigned a specific nine character number known as originating agency identifier (ORI). Moreover, the police department maintains a record of every request sent to the state for a records request.

Exhibit 1, an NCIC printout pertaining to record requests for Gonzalez and Alayeto between January 1, 2007, and August 1, 2007, indicates that numerous checks were run during that time period. Indeed, records were requested by MPD District 5 on July 4, 2007, June 29, 2007, and June 5, 2007. The NCIC records do not identify who made the inquiry and do not reveal to this court the status of the license. Nevertheless, the records corroborate testimony that a request was made and no evidence controverts the testimony that Gonzalez's license was revoked. The documents, which include the NCIC report, a Milwaukee PD Audit Log, and memo entries for Rodriguez, suggest that

4

a console work station at MPD District #5 made a check for records of Gonzalez on June 29, 2007, and a MPD mobile data computer assigned to squad 5260 and source operator number 011298 (MPD Officer Rodriguez or Lacina) made a traffic record request on Gonzalez on June 10, 2007, at 9:21 p.m. which came back "revoked."

Recently, the Seventh Circuit Court of Appeals rejected an argument by the defense that an officer lacked probable cause where he had learned at some unidentified point in an investigation that the defendant's license had been suspended. *United States v. Charles v. Hobbs*, 509 F.3d 353 (7th Cir. 2007). In so ruling, the court wrote:

> The only evidence regarding Hobbs's driving privileges was Oberle's testimony that sometime prior to Hobbs's arrest, he had discovered that Hobbs's driver's license was suspended. Oberle also testified at the suppression hearing that at the time of the arrest, he was still of the belief that Hobbs's license was suspended. The district judge found Oberle's testimony to be credible, and without clear error, we refuse to disturb that credibility determination. In light of Oberle's belief that Hobbs's license was still suspended and the complete lack of evidence to the contrary, the officers also had probable cause to arrest Hobbs for driving with a suspended license. The district court properly denied Hobbs's motion to suppress the evidence obtained from Hobbs's car.

*Id.*, at 361 (citations omitted).

After careful examination of all of the testimony and documents presented, the court finds that the officers were familiar with these defendants as members of a gang and that they had checked on the status of Gonzalez's license within a reasonable time prior to the arrest.

Now, therefore,

IT IS ORDERED that the recommendation of Magistrate Judge Callahan is adopted.

5

IT IS FURTHER ORDERED that defendants' motion to suppress is denied.

Dated at Milwaukee, Wisconsin, this 5th day of August, 2008.

BY THE COURT

C. N. CLEVERT, JR.
U. S. DISTRICT JUDGE